## Klein v. Inman et al.

June 6, 1944.

Henry M. Johnson for appellant.

Nicholas H. Dosker for appellee Gibbs-Inman Realty Co.

Robert P. Hobson for other appellees.

Opinion of the Court by Van Sant, Commissioner
—Reversing.

The action was instituted by Junius C. Klein, then eighty-three years of age, against his daughter, Margaret Klein Inman; her husband, Harry C. Inman; Pearce Klein; his wife, Murle Klein; the Inman Company, a corporation; Gibbs-Inman Realty Company, a corporation; Charles W. Inman, President and Director of the Inman Company; and his wife, Emma R. Inman, a Director of the Inman Company. The plaintiff alleged that on the 6th day of April 1938, he tranferred in trust to Margaret Klein Inman and Pearce Klein certificates of stock in the Inman Company and the Gibbs-Inman Realty Company, exceeding in value the sum of $100,000. The terms of the trust were alleged to have been that the trustees were to hold and use the stock, both principal and income, for the settlor's use and benefit, and to dispose of it as the settlor should direct, upon such terms and conditions as he should later in detail set out in writing; one of the conditions to be that the trustees should maintain the settlor for the remainder of his life. It was further alleged that Pearce Klein illegally tranferred the stock to his wife, Murle Klein, without consideration. The petition further alleged that the plaintiff notified the Inman Company and the Gibbs-Inman Realty Company that he was the owner of the stock, and was entitled to any dividends of either of the companies to the distribution of which the owner of the stock might be entitled. That despite this notice, both corporations, upon direction of the trustees, attempted to effect changes in the ownership of the stock and certificates therefor, whereby the original stock was canceled and other stocks issued in lieu thereof payable to the trustees and their assignees in their individual capacities. The petition contained a prayer, asking that the plaintiff be adjudged to be the owner of the stock in both corporations, as originally issued to him; that the Inman Company and the Gibbs-Inman Realty Company be directed to issue stock certificates to the plaintiff for the total shares of stock as originally issued to him; and that he be awarded judgment against Margaret Klein Inman, Pearce Klein, and Murle Klein, for damages in the sum of $10,000 for the wrongful withholding of the stock; he further prayed for his costs and all proper and equitable relief. The issues were joined by answer.

In view of our conclusion in respect to the issues set out in the original petition, it is unnecessary for us to consider the matters alleged in the amended petition. The cause was referred to a Special Commissioner for a determination of the facts, and trial was had before the Chancellor on exceptions to the report of the Commissioner. Judgment was entered sustaining the report and dismissing the petition. The Special Commissioner reported that he found from the evidence that the transfers of the stock in both corporations to the son and daughter of the plaintiff were not conditioned as alleged, but were completed gifts inter vivos.

Many letters between the parties and their agents were filed in the record. The letters signed by Pearce Klein show beyond doubt that for a great many years prior to the transfer, he had been trying, by one ruse or another, to obtain possession of all the stocks owned by his father, both before and after the death of his mother in the year 1937. The letters, and other evidence, further show that a short while previous to the transfer of the stock, Margaret Inman learned that her father contemplated a second marriage, and so advised her brother, Pearce. Thereafter, until his purpose was accomplished, Pearce persistently attempted to persuade his father to transfer the stock to him and his sister. He finally came from his home in Schenectady, New York, to Louisville, for the express purpose of persuading his father to make the transfer, at which time he succeeded. Margaret claimed that she did not know that the transfer of the stock was being contemplated; but a letter written by her husband at her direction, which was introduced in evidence, shows this to be untrue, and admits that there was some agreement on Margaret's and Pearce's part to maintain the father in event the stock was transferred. That letter reads:

"Inman Furniture Company, Inc.
Louisville, Ky.
Jan. 3, 1940

Mr. J. C. Klein
1300 Willow Ave.
Louisville, Ky.
Dear Mr. Klein:

Margaret received your letter, dated December 31st last evening, January 2, 1940. She left the city this morning and will be gone for probably a month or more.

I understand that this stock was transferred to each of them in consideration of their promise to care for you in the event you lost your home and I am sure that they stand ready to do it. However, they will not, under any consideration, return the stock to you.

I trust you enjoyed a very delightful Holiday Season and wishing you everything good for the New Year, I am

Sincerely yours,
(Signed) Harry Inman.''

On September 25, 1940, Harry Inman wrote Mr. Klein a letter, the pertinent part of which is as follows:

'';Margaret has returned to me your letter of September 3rd and the only thing, Mr. Klein, I can do is to refer you to the letter I wrote you under date of January 3rd pertaining to the same subject.

\* \* \* \* \*

I trust you are enjoying the best of health and with kindest regards, believe me

Sincerely yours,
(Signed) Harry.''

Further evidence that there was a promise (which it is not claimed has been fulfilled) on the part of Margaret and Pearce, in consideration of the transfer of the stocks, is evidenced by a letter written by Pearce to plaintiff's attorneys, July 9, 1941, as follows:

"July 9th, 1941.
501 Plymouth Avenue,
Schenectady, N. Y.

Messrs. Doolan, Helm, Stites and Wood
1212-1226 Kentucky Home Life Bldg.,
Louisville, Ky.

Attention: John Blakey Helm, Esq.
Dear Mr. Helm:

I have your letter under date of July 5, 1941, and have noted the contents of the same. Unfortunately the stocks which you ask returned to my Dad are not in my possession nor have they been since June 15, 1938, at which time I turned them over to my Wife, who has had ownership of them since and now refuses to relinquish them. I am therefore unable to return them to Dad.

I however feel that you should know the facts surrounding the transfer of the stocks to me in the first instance. The stocks were transferred to me on April 5, 1938, Dad having previously said to my brother-in-law, Mr. Inman, my sister and I, that he wanted to give the stocks to Margaret and I, because he did not know exactly what he was going to do about the house in the future. Margaret said in answer, 'Why Dad you know, you and Mother always said, "The house was to go to Pearce,".' Dad made no answer to this, but said to Harry Inman, my brother-in-law, 'I want to give certain stocks to Margaret and Pearce to insure that I will be taken care of in my old age, if it becomes necessary.' Harry, then asked Dad, what he wanted to do. Dad stated, "I want to give Margaret three certificates and Pearce two certificates of the Inman Preferred, and I want to give all the Gibbes-Inman to Pearce.' Dad then signed the certificates as he wanted them transferred and directed Harry Inman to transfer them to us, which was done while we waited, and the new certificates were turned over to us by Harry Inman.

The day following, Dad took me to the Gibbs-Inman Realty Company and stated to Mr. Aiken, an officer of the Company that he wanted to give me his Gibbs-Inman stock, except for three shares. Thereupon, Dad signed the stock for transfer, and transferred 237 shares to me, retaining for himself three shares, so as to enable him to vote. These are the facts and circumstances surrounding my coming into possession of the stock.

As I previously stated, the stock was all turned over to my wife, with Power of Attorney, on June 15, 1938, and the said stock today and ever since June 15, 1938, has been in her posession and is her property.

In view of the fact that I do not own the said stock, and in view of the further fact that my Wife refuses to give up the stock, I am unable to return them.

Sincerely yours,
(Signed) Pearce Klein."

On the 15th day of July, 1941, the following telegram was dispatched and received by the addressee:

"NA215      23=SCHENECTADY      NY      15
1204P

1941 JUL 15 AM 11 25

ATTORNEY JOHN BLAKEY HELM=

1212-1226 KENTUCKY HOME LIFE
BLDG LVILLE=
WIFE HAS CONSENTED TO TURN OVER TO
DAD ALL STOCK MENTIONED IN YOUR TELE-
GRAM PLEASE ADVISE WHAT INSTRUMENTS
YOU WISH EXECUTED AND FORWARDED=
PEARCE KLEIN.''

Pearce denied that he sent this telegram, and wrote a letter to Mr. Helm on August 5, 1941 in which he said the telegram was sent by his attorney, in his presence, although he protested its dispatch. Comparing the language of the telegram with the many letters admitted to have been written by Pearce himself, we are of the opinion that Pearce was the author of the telegram. It is unlikely that his attorney would have used the word ''Dad'' (so frequently used by Pearce in his letters), in wording the telegram. The attorney was not called as a witness in the case. Thus, the record contains admissions by both Pearce and Margaret, through her husband (whose authority is not repudiated), that there was an agreement in consideration of the transfer of the stock; and the part of the agreement admitted by Pearce and Margaret is sufficient corroboration of the whole agreement testified to by Mr. Klein to substantiate him in his contention, especially in view of the fact that both Pearce and Margaret testified, and now contend, that no agreement whatever was had in consideration of the transfer of the stock. It is not claimed that Pearce's wife, Murle, was an innocent purchaser of the stock. Therefore, we are of the opinion that the Chancellor erred in not sustaining the exceptions to the report on this issue.

It is admitted by the Inman Company and the Gibbs-Inman Realty Company that they had notice of Mr. Klein's claim to the stock before they transferred it on their books. Their acts in transferring the stock, therefore, were not innocently performed. It is likewise shown that Harry Inman, an officer of the Inman Company, had actual notice of all the facts surrounding the transfer of the stock. Such notice will be imputed to his company. The Chancellor should have awarded judgment in favor of Mr. Klein, declaring him to be the owner of the stock sued on, in its original form, and to be entitled to all the rights and emoluments incident to its ownership at all times since its original issue to the plaintiff; directing the two corpora-

▉

tions to cancel any stocks issued in exchange for the  ▪
original stock owned by Mr. Klein; and to reissue to
Mr. Klein certificates of stock in the same form and
amount as the original stock issued to him in each of
the corporations. There is no proof that the plaintiff
was more than nominally damaged by the withholding
of the stock.

Judgment reversed, with directions that another be
entered in conformity with this opinion.

Whole Court sitting.